May it please the Court, I'd like to reserve two minutes for rebuttal, if I may. This case presents a rather simple question of whether a plaintiff who challenges the constitutionality of a licensing law, both facially and as applied, is required first to apply for a license before he can bring suit for prospective injunctive relief. How can he challenge as applied if he hasn't applied? It's a common misconception, I think, that I think the district court embraced, that as applied means as applied to this particular person, and that's not what it means. An as applied challenge is a challenge to how the law is ordinarily applied. Only it's not in this case. There's not a record of how the law is ordinarily applied, is there? We don't know yet, because this was a 12b6 motion, so we don't have any discovery yet. However, if we can assemble facts to show how the law is ordinarily applied to people in Mr. Underwood's circumstances, we would be allowed to, we would be entitled to relief on the merits. Would you be willing to pay for the whole thing, if it turns out you can't find any cases like that? Pay for the, you mean file an application fee? No, no. File, file the money to pay the government for all the expenses gone through. We are not required to do that. I'm aware of that. I'm asking you as a practical matter. As a practical matter, no, Your Honor, we'd be entitled to relief. So you want to, you want to take a case where you have no facts running in your favor, and let's hope that the government is willing to fold, because maybe we'll find something. No, Your Honor, that's not correct. We are very familiar with these kinds of statutes. Plaintiffs who have brought these kinds of cases have been entitled to relief. You're switching it around. You're talking from as applied, you're now making it as applied generally. We're talking about as applied particularly. Your Honor, we are allowed to bring a facial and as applied challenge alleging that as this statute is typically applied, it violates the Constitution. We have reason to believe that. It's typically applied, but it may be applied differently in your case. We're entitled to do that. I'm sorry, Your Honor, but I meant to say that we're entitled to have all of the allegations in our complaint assumed as true and to have all inferences drawn in our favor on this motion. So there's two aspects to ripeness, constitutional ripeness and prudential, right? That's right. So my understanding here is that district court invoked both, but actually prudential ripeness seems to be the doctrine that applies here. Well, Your Honor, even if that were the case, prudential ripeness would not apply because Mr. Underwood has been injured and he's currently being injured by this statute. Has he injured? He's injured because he's not allowed to practice his trade. This Court held in the issue. Well, you know, if he would just simply submit an application, he may well be granted. But, Your Honor, he cannot be required to submit to an unconstitutional law before practicing his trade. Does the word contrived mean anything to you? This case screams out to be contrived. Not at all, Your Honor. I'm sorry, Your Honor, but that is not a contrived case. Why doesn't he submit an application and see what happens? Because he cannot be required to submit to a facially and as applied unconstitutional law. He would rather bring a theoretical challenge than actually see if he can get a license. That's how I see it. In Merrifield, this Court held that the plaintiff had standing to challenge the licensing requirement because he was faced with the prospect of either punishment if he worked without a license or of enduring the expense and effort of obtaining the license. And how expensive is it to obtain a license? Quite expensive. The Nevada laws require you to submit extensive research and reports in order to prove that you would — that there's a sufficient market — these laws are very vague — to economic conditions. Nobody knows what that means. The agency's director testified he doesn't know what that means at the legislative hearing. So he is required to undergo — to submit scale maps showing where his area of operation will be, financial details and reports. It is a burdensome requirement. Did you allege that, in your complaint, that they routinely deny these applications? Invoking one or two of these provisions that you're — that you want to challenge? We allege that they are required to deny these applications if he would compete against existing moving companies and if he would not foster sound. But did you allege that they are denying those applications on that basis? I think that is — if we — if it's not in those words, it's a reasonable inference from our complaint, and we're entitled to those inferences on a 12b-6 motion. And that's why every court to consider this issue has denied motions to dismiss on these cases. In the Bruner case, the Kentucky case that we submitted as supplemental authority decided February of last year, the plaintiff won on the merits without — on a as-applied challenge by filing the complaint, obtaining the discovery that showed that his allegations were correct. When existing moving companies objected to a new competitor entering the marketplace, he — they were blanket denied. That's our allegations, and we're entitled to discovery to demonstrate that. Well, I still don't see why it's so burdensome for you just to go down and file the application and see what happens. And if you — if it's denied, you can come into Federal court and bring a 1983 case. Because the 1983 plaintiff is not required to exhaust his administrative obligation. That's not — that's not — I'm not talking about exhaustion at that point. I understand, Your Honor. My point is — Once it's — if they deny it and they invoke those provisions that you want to challenge, you can come into Federal court in a 1983 case and have it litigated. And you may well win. He is entitled to bring a facial challenge. The district court made no explanation of why it denied his facial challenge. He is also entitled to bring prospective relief on an as-applied basis. This Court said in Hay v. Oakland that if the plaintiff can muster the evidence to show how this licensing law is typically applied, the — and that it will be applied in the same manner in his case, he can bring a case. Now, we know that the agency does deny licenses in circumstances like this. Just recently, after the briefing in this case was filed, they denied an application for another one of my clients up in Reno who wanted to expand under this statute for exactly these reasons. And if we're allowed to proceed, we would introduce that. Is that it? Expanding the operation would harm competition? I'm sorry? Expanding the — you just made a reference. Would it harm the competition? Maybe that's the case you should bring. Your Honor, that case has been brought, and it's in district court right now. However, we are allowed — we are free to bring both as-applied and facial challenge. You're free to file whatever you want. You may not get a receptive battle. I'm sorry, Your Honor. This Court held in Merrifield that the plaintiff had the right to bring prospective — a case for prospective relief on both a facial and as-applied basis. The Missouri district court in Muni, the Kentucky district court in Brunner, the Oregon district court in Sweet, there are no cases at all that stand for the proposition that a plaintiff must submit to an licensing law before bringing both facial and as-applied challenges to the — I always observe that I read precedents differently from you. So, you can say what you want, but I don't think it's quite so black and white. There is a doctrine prudential, and in this case, district court said it's really unclear what harm your client suffered by not proceeding with an application, and I've got to say that seems pretty true to me. The harm that Mr. Underwood suffers is that he's not allowed to run a moving business unless he submits to this law. That's the harm. And he would rather have a lawsuit than a business. And he cannot obtain the license without submitting to unconstitutional criteria. This is just a case like Willie v. Maynard or the other cases where a plaintiff is put in the untenable position of having to forego his constitutional rights on one hand or having to undergo an unconstitutional licensing requirement on the other. Even if you think that our case should be dismissed on the as-applied level, our facial challenge must go forward, because we allege that this licensing requirement on its face violates the Constitution for the reasons alleged in the complaint. I think one of the confusions is the district court seemed to think that that only applies to First Amendment cases, but that's not true. In fact, there are plenty of cases, including Merrifield, in which plaintiffs have been allowed to bring suit for prospective relief against licensing requirements outside the First Amendment context, most notably in the Atchison-Topeka case from the Supreme Court that we cite in our brief, in which the plaintiff was a certificate of public convenience and necessity to law, and exactly like in this case, they did not apply for a license. I'd like to reserve the remainder of my time, if I may. Robertson, that's fine. Thank you. Good morning. May it please the Court. I'm Senior Deputy Attorney General Andrea Nichols from the Nevada Attorney General's Office, appearing on behalf of the Nevada Transportation Authority. The basic rationale behind the ripeness doctrine is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging party. Here, the effects of the challenge statute have not been felt by Mr. Underwood in any concrete way, and this is the type of case where the Court would benefit from a developed record. Is it true the applicant is required to present detailed information about the economic circumstances? Yes. And the — What's the Board supposed to do with that? Why are they looking at that? Well, they're looking at whether or not there's a market need. And I think at the very simplest level, the Transportation Authority needs to make sure that there's not too many trucks or too few trucks on the road. And either way, it's detrimental to — Why is that important? Pardon me? Why is that important? Well, either way, it's detrimental to the traveling public. Ultimately, if — In this case, the travelers are sofas, aren't they? I mean, this is a moving company. Yes. So what's the exposure to the public? Why is it necessary for the state to protect the economic well-being of the existing competitors? Well, it's interesting that the trucking industry used to be regulated by the Public Utility Commission. And it's sort of the same thing as we regulate utilities so that you don't have five different wires going to your house. You just have one utility coming in. And telephone companies are still, to some degree, regulated, although the world has changed enormously, and so the regulation isn't what it used to be. I'm not sure why that says that the state has an interest in limiting the number of moving services in a given area. Again, what it comes down to is too many trucks or not enough trucks. And we all use the highways. The public uses them. As one court said, the public is ultimately the loser as the result of unnecessary duplication of utility or transportation facilities. Well, these aren't people driving scheduled services. The trucks, if they don't have a job, aren't going to drive around empty and clutter up the roads. And I don't think there are going to be more jobs just because there are more trucks because people need to move or they don't need to move. The fact there's another competitor doesn't mean suddenly I'm going to move from one house to another. So I'm still trying to figure out why the state cares and does appear to impose some kind of or provide some kind of protection for existing companies against new entrants. I mean, if that's how the economy worked, the technology revolution of the last few decades probably wouldn't be here. We'd still be depending on typewriters. Having duplication of services ultimately results in a reduction in income and revenue for existing carriers, and that causes an inevitable reduction in schedules and services. There are no schedules for moving companies. I just said that. You didn't disagree. It's not like it's a railroad or a bus company providing a bus at every 9 o'clock every morning. This is a moving company. And what this regulation appears to do is protect the existing entrants and permit them to keep their prices at their level and not have to worry about competition. That's really not how the economy works. So I'm still waiting for the rationale for what the state's trying to accomplish with these regulations. Again, I think it comes down to we want not too many trucks and not too few trucks. But I would point out that the – Well, you know, if there's competition and somebody is driven out of business, that doesn't mean everybody else stops and there's not a moving company left in Reno. This is a theory from public transport or public utility being applied in a field where I have a hard time understanding where it makes any sense whatsoever. Now, you may be right with regard to whether this plaintiff at this point in time has a challenge. Boy, I have a hard time seeing how the state ultimately justifies these regulations if, in fact, they apply them in such a way as to exclude competition, which is what it sounds like. Well, it's interesting that you would bring that up. Attached to my brief are the actual statutes at issue. And I would point you to NRS 706.391. And it's at docket entry 19-2, page 4. Part 3 of that statute says the authority shall not find that the potential creation of competition in a territory which may be caused by the granting of the certificate or modification by itself will unreasonably and adversely affect other carriers operating in the territory for the purposes of paragraph C of subsection 2. Which really explains why this needs to be an as-applied look at the circumstances. Right now, we've got allegations by the plaintiff that at a motion-to-dismiss stage were required to accept. Exactly, Your Honor. As the district court pointed out, the plaintiff presumes unconstitutionality in order to justify ripeness. And also, if you look at this particular provision, assumes that the transportation authority will apply the law in a way that's actually prohibited by the statute. But we've been told that, in fact, this attorney told us that one of his clients has been turned down on this basis. Now, we don't know. There's no record. But there can't be a record because the case was flushed on a motion to dismiss. So if that's true, I'm aware of the statute you cite. Indeed, that's one of the reasons why the State has a pretty decent argument here for leading us to believe that, well, if the application is submitted, it will be granted, and so there's no reason to have a lawsuit. But if, in fact, it's the case that applications get turned down, if this isn't the lawsuit, there's going to be a lawsuit someday. Well, there is, and I am familiar with the one that he's referencing. It actually had to do with a limousine company that was seeking to expand services. But I would point you to its docket entry, 19-1, page 16. That's a footnote in my brief. I asked the court to take judicial notice of the minutes of the Nevada Transportation Authority. They're posted online. No one has been denied a license as a mover of household goods. As a matter of fact, there is a process that allows existing movers to intervene. No one's intervened. And, again, the minutes of those proceedings are a matter of public record. All the meetings are open, and Mr. Sandifer brought a similar case in Kentucky and submitted, of course, that order, which showed that nobody was getting new licenses. But in Nevada, as a matter of public record, nobody's being denied a license as a mover of household goods or a certificate. Okay. Anything else? No. I'd be happy to answer any questions. Thank you. Your Honors, this case is ripe on the as-applied challenge, even if you put aside the fact that he can't run his business, because he has been cited during the pendency of this appeal for operating without a license, and he will be cited again unless he files an application under an arbitrary licensing scheme that operates essentially like a coin toss. And he cannot be required to submit to the coin toss. Well, how do we know it operates like a coin toss? We allege that it does operate like a coin toss because it is so vague. And the fact the district court essentially says this, the district court uses the Mr. Underwood can't be required to file an application on the hopes that he might be lucky enough to have the process arbitrarily result in his favor. He is allowed to bring an as-applied challenge prospectively by showing, and to rule otherwise would be to say that you can never bring prospective as-applied challenges. And we know that you can't. It wouldn't. Actually, I think, Your Honor, it would, because it would say that you have to file an application and see how it affects you before you can challenge it. And we know from the Supreme Court precedent you can bring a pre-enforcement as-applied challenge where the only question is whether it is constitutional to apply the administrative procedure to the litigant. The Supreme Court says the agency can be defied and judicial relief sought as the only effective way of protecting the asserted constitutional right. Mr. Underwood will be cited again if he does not apply for an application for a moving license. And the licensing criteria are so arbitrary he should not be required to run the gauntlet on the hopes that on the off chance he might survive. Thank you, Your Honor. Thank you, Counsel. The matter is submitted.
judges: Paez, Clifton, Duffy